# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       Plaintiff,

       v.                                Case No. 04-CR-306

TODD A. MILLER,

       Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE WILLIAM C. GRIESBACH

The defendant, Todd A. Miller, was charged in the three-count indictment issued by a federal grand jury in this district on December 28, 2004. Count One charges him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Two charges the defendant with knowingly possessing, with intent to distribute, a mixture containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He is charged in Count Three with carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(I). The defendant entered a not guilty plea to the charges.

Pursuant to the pretrial scheduling order issued at that time, the defendant has filed the following motions: 1) a motion to suppress evidence and statements based on an unreasonable execution the search warrant (Docket #15); 2) amended motion to suppress evidence and statements based on a defective search warrant and memorandum in support (Docket #17); 3) amended motion to suppress alleged custodial statements of Todd A. Miller to Shawano Police Department officers Don Conradt and Ryan Atkinson (Docket #18); and 4) a motion to compel discovery (Docket #29). The defendant's motion to suppress evidence

and statements based on a defective search warrant and defendant's motion to compel discovery were addressed in a separate decision. The remaining motions will be addressed herein.

On March 10, 2005, this court conducted an evidentiary hearing on the defendant's motion to suppress. At the hearing, Officers Dan Conradt, Michael Musolff and Ryan Atkinson of the Shawano Police Department testified on behalf of the government. Correctional Corporal Marvin Ninham of the Shawano County Jail also testified for the government. Ashley Wilber testified on behalf of the defendant. Based upon the testimony and evidence adduced at the hearing, the court makes the following findings of fact and recommendation for the proposed disposition of the defendant's motions to suppress.

## FINDINGS OF FACT

On November 11, 2004, members of the Shawano–Menomonee County Drug Enforcement Unit went to a residence at 1050 South Lafayette Street in Shawano, Wisconsin, at approximately noon to execute a search warrant at the residence. The entry team for the search warrant was comprised of several officers, including Officers Ryan Atkinson, Dan Conradt, and Bieber of the Shawano Police Department (SPD) and two uniformed officers. Officers Atkinson, Bieber, and Conradt were in Shawano Police Department polo shirts with badges. The other two officers with them were in full uniform.

The officers observed a young woman on the porch smoking a cigarette. According to Officer Atkinson, he identified himself to the woman and stated that the officers were with the Shawano Police Department and had a search warrant. Officer Atkinson asked the woman to identify herself and then asked for Marsha Krause. Officer Atkinson testified that the young woman, who was subsequently identified as Ashley Wilber, stated, "she's inside." She said she would get Ms. Krause. Ms. Wilber went into the residence and the officers followed her. Officer Atkinson told Ms. Wilber, "We are coming in with you. We have a

search warrant." The search warrant authorized the search for and seizure of drugs. Officer Atkinson was concerned that the persons inside the house might try to get rid of the drugs.

The testimony of Ms. Wilber differs from the testimony of the officers as to the events leading up to the officers' entry into the residence. According to Ms. Wilber, she had stayed overnight at the home of her friend, Marsha Krause, at 1015 Lafayette Street. They were celebrating the birthday of Ms. Krause's son. Ms. Wilber woke up at about 11:30 a.m., talked to Ms. Krause and the boys and then went out to the porch to have a cigarette. While she was on the porch, she observed a squad car and an unmarked vehicle quickly pull up to the residence. Two officers came to the door and asked her if Marsha Krause was home.

Ms. Wilber testified that she told the officers that she would see if Ms. Krause was in the house and she opened the screened door and the front door. She stated that when she went to shut the front door behind her, an officer pushed open the door. According to Ms. Wilber, the officers did not say anything about a warrant and they did not identify themselves. However, she also testified that one officer said that he was with the Shawano Police Department, but he did not announce that he had a warrant. Ms. Wilbur said that the officers did not say that they wanted to come into the residence.

According to Ms. Wilber, one of the officers at the door was wearing a uniform. The others were wearing blue polo shirts with logos on the shirts. She knew they were there on official business, although she had no previous experience with search warrants. She saw a piece of paper which the officers had, but never read it.

The officers entered the residence and announced that they were the police and had a search warrant. Ms. Krause was observed coming out of the kitchen. Officer Conradt informed her that they had a search warrant. Officer Atkinson gave Ms. Krause her copy of the search warrant and asked for identification. Six to ten people were in the house including

the defendant, Todd Miller, who identified himself, and two children.   A protective search of the house was done as soon as the officers got inside.

The officers obtained information from all the persons inside the residence and then went to their squad car to check for outstanding warrants.  The records check showed a pending probation and parole warrant for the defendant and outstanding warrants for two other persons in the residence.  The officers then went back inside the residence.

The defendant said nothing when the officers told him about the warrant.  The defendant was handcuffed behind his back and searched incident to his arrest. Officer Conradt then walked the defendant out of the residence through the rear door.

As Officer Conradt was walking alongside the house with the defendant, the defendant pointed to the window of the baby's room with his arm and stated that there was a black bag inside the room containing three grams of cocaine.  He also said that there was a scale in the closet.  Officer Conradt told the defendant that Officer Atkinson would talk to him later about this.  Officer Conradt asked no questions of the defendant before the defendant offered the information.  There was no other communication with the defendant.

Officer Conradt placed the defendant in his squad car and went back into the residence.   He told Officer Atkinson about the black bag with the cocaine in the closet in the baby's room.  Officer Conradt also told Officer Atkinson that he believed the defendant wanted to speak to him.  Officer Conradt did not believe that the defendant was under the influence of alcohol or drugs at the time he made the statement.  Officer Atkinson had no other contact with the defendant on November 11, 2004.

A canine search was conducted at the house.  Officer Rabideau, the canine officer at the scene, advised Officer Conradt that a drug-detecting dog had alerted to drugs in the closet area.  Officer Conradt went to bedroom and located the black bag in the closet.  When he opened the bag, he found a firearm inside, specifically a black Taurus .9 or .10mm handgun.

In another zippered area of the bag, he found a smaller bag which contained a white substance which field tested positive for cocaine. The bag also contained men's clothing and deodorant. On a dresser in the room, the officer observed rolling papers on a dresser for use in rolling marijuana cigarettes. No other contraband was found in the house. After Officer Conradt finished the search of the baby's room, he helped Officer Bieber search the other rooms.

SPD Michael Musolff was contacted by Officer Atkinson to come to the residence to transport people who had outstanding warrants. He saw the defendant being placed into the squad car of another officer and he then saw him in the booking area of the jail. When he saw him in the booking area, Marvin Ninham, a corporal with the Shawano County Jail, was performing a pat down of the defendant.

Officer Musolff was filling in the booking form for the defendant when Corporal Ninham brought him a baggie containing a white powdery substance and said that he found it in the defendant's jacket. Corporal Ninham asked what the substance was and Officer Musolff said that it was cocaine. Officer Musolff took the package and returned to the residence on Lafayette Avenue. He gave the baggie with the white powdery substance to Officer Atkinson.

Officer Musolff completed the lockup and detention form on the defendant. He was helping jail staff to complete the booking process. Among other questions, the form asked was whether the person involved was under the influence of drugs or alcohol. Officer Musolff checked "yes" to cocaine because the defendant had told him that he had used cocaine earlier in the day. The defendant said he did not use alcohol, he only used cocaine. However, the defendant seemed fine to Officer Musolff. Although his eyes were a little glassy, the defendant was able to walk appropriately, and his speech was not slurred. Officer Musolff last saw the defendant on November 11, 2004.

Corporal Ninham first saw the defendant at approximately 12:30 p.m. on November 11, 2004, when the defendant was brought in by Officers Musolff and Sharkey. Corporal Ninham was the booking agent and he asked certain medical questions of the defendant. The defendant appeared to understand the questions and his demeanor was fine. The defendant's eyes were a bit glassy and reddish and Corporal Ninham assumed that the defendant had something in his system. Corporal Ninham asked the defendant if he had used drugs that day and the defendant said that he had used cocaine that morning. He also asked the defendant other questions regarding medical concerns.

Corporal Ninham completed an administrative/disciplinary segregation form on which he indicated that the defendant had used cocaine and appeared intoxicated. Based on that information, Corporal Ninham said that a person is kept segregated for 24 hours before he is put into the general jail population. The defendant exhibited no withdrawal symptoms and the next day he seemed fine. According to Corporal Ninham, the defendant did not seem to be fine on November 11, 2004, at 1:00 p.m. He wrote on the form that the "inmate appears intoxicated."

At approximately 2:45 p.m., Officer Atkinson conducted an interview with the defendant at the jail. He read the defendant his Miranda rights from a printed advice of rights form and the defendant agreed to give a statement. During the interview, the defendant was calm and Officer Atkinson detected no odor of alcohol. He did not recall any specific observations about the defendant's eyes. The interview was conducted in a small room containing a table with two chairs. Office Atkinson was the only person in the room with the defendant. The defendant was not handcuffed. He was not fidgety. Officer Atkinson had been informed at the jail that the defendant said he had used cocaine that morning.

Officer Atkinson began the interview by asking the defendant about his background, including where he lived and whether he was a member of a gang. He then asked the

defendant if the black bag was his and the defendant responded that it was. The defendant said that the cocaine was his, and no one else knew about it. He said he did not know there was a gun in the bag until he went to take a shower. When asked where he lived, the defendant said he had no permanent address but stayed wherever he could. He was at the Lafayette Street residence for a birthday party. He told Officer Atkinson that he does not go to that address very often.

Officer Atkinson asked the defendant where he obtained the cocaine and the defendant said it came from Mike. The defendant said he got the brass knuckles, which were in the bag, the night before. The defendant answered questions put to him appropriately. The defendant did not want to give a written statement.

The defendant did not ask to take a break during the interview and he was not offered anything to drink or eat. No threats were made to the defendant. The defendant was not combative or uncooperative. The interview was not videotaped.

The report of the interview which Officer Atkinson prepared does not state that the defendant said he rarely stayed at the Lafayette Street address. Although Officer Atkinson testified that he told Ms. Wilber that he had search warrant, that information is also not included in his report. The report also does not state that Officer Atkinson identified himself as a law enforcement officer.

### Motion to Suppress Evidence and Statements Based on Unreasonable Execution of the Search Warrant

The defendant filed a motion to suppress evidence and statements based on an unreasonable execution of the search warrant. Specifically, the defendant seeks to suppress the Taurus pistol and the 46.5 grams of cocaine, as well as his statement to Officer Conradt that the cocaine recovered at the Lafayette residence belonged to him. He also seeks suppression of his statement to Officer Atkinson that the cocaine and the firearm recovered

at the Lafayette residence belonged to him. The defendant further contends that the law enforcement officers violated his Fourth Amendment right to be free of unreasonable searches and seizures by unreasonably dispensing with the knock and announce requirement of the Fourth Amendment. The defendant cites <u>United States v. Espinoza</u>, 256 F.3d 718, 723 (7th Cir. 2001), in support of his position.

In response, the government asserts that there is no basis for the defendant to claim that the warrant was improperly executed. According to the government, the purpose of forbidding unauthorized no-knock searches is to require officers to indicate on what authority they are acting and the purpose of their presence at the premises. In this case, once Ms. Wilber attempted to close the door on the officers, she conveyed to them that they were being denied admittance and, therefore, the officers were justified in their immediate forcible entry into the residence. The government contends that had the officers waited longer than they did, it would have been both fruitless and potentially dangerous.

The government further contends that the verbal exchange between the officers and Ms. Wilber constituted more than ample delay between the officers' announcement of their authority and purpose and the search to justify their entry into the premises. Alternatively, the government asserts that suppression of evidence is not a remedy for a violation of the knock and announce rule, citing <u>United States v. Langford</u>, 314 F.3d 892 (7th Cir. 2002).

In assessing the reasonableness of a search or seizure, the method of a law enforcement officer's entry into the dwelling is one of the factors to be considered. <u>Wilson v. Arkansas</u>, 514 U.S. 927, 934 (1995); <u>United States v. Gillaum</u>, 372 F.3d 848, 854 (7th Cir. 2004). "Absent exigent circumstances, law enforcement officers must knock on the entry door of a dwelling and 'announce their identity and intention before attempting forcible entry.'" <u>Gillaum</u>, 372 F.3d at 854 (quoting <u>United States v. Espinoza</u>, 256 F.3d 718, 723 [7th Cir. 2001]). The court of appeals for this circuit "has recognized that 'a necessary corollary of the

knock and announce requirement is that the officers must wait a reasonable amount of time after announcing their intention to serve a search warrant before attempting a forcible entry.'" Gillaum, 372 F.3d at 854 (quoting Espinoza, 256 F.3d at 723).

In Espinoza, 256 F.3d at 722, the case relied on by the defendant, the court of appeals for this circuit reiterated that in a case not involving exigent circumstances there is no bright-line rule delineating the boundary between a reasonable and unreasonable amount of time for officers to wait after announcing their presence and before attempting a forcible entry. The court stated that "in each case where the officers have allegedly not waited a sufficient amount of time before attempting a forcible entry, the question must be evaluated on the basis of what time period is reasonable under the particular factual situation." Id.[1]  The court noted that "[t]he individual privacy interests underlying the Fourth Amendment's knock and announce requirement, as identified by the Supreme Court, are: (1) the opportunity for individuals to comply with the law and peaceably permit officers to enter the residence; (2) avoiding the destruction of property occasioned by forcible entry; and (3) the opportunity for individuals to 'prepare themselves' for entry by law enforcement officers by, for example, 'pull[ing] on clothes or get[ting] out of bed.'" Id. at 723 (citing Richards v. Wisconsin, 520 U.S. 385, 393 n.5 [1997]; Wilson, 514 U.S. at 930-32.)

In this case, the officers had no need to knock as Ms. Wilber was standing on the porch.  Ms. Wilber knew the men who approached the porch were police officers (two of the men were in full uniform and the others were in SPD polo shirts with their badges clearly visible).  In fact, Ms. Wilber knew the officers were there "on official business."  Although Ms. Wilber testified that the officers did not identify themselves or their purpose, Officers Atkinson and Officer Conradt consistently testified that Officer Atkinson announced that they were with

---

[1]In Espinoza, 256 F.3d at 722, the timing of the officers' entry after their initial knock and announcement (five seconds) was not raised as an issue on appeal.  Therefore, the court did not make a "formal holding" regarding the district court's determination that a Fourth Amendment violation had occurred.  Id.

the Shawano Police Department and were there to execute a search warrant. Given her conflicting testimony about whether the officers identified themselves at the door, the court finds the officers' testimony more credible. The officers identified themselves, announced that they had a search warrant, and asked for Ms. Krause. Ms. Wilbur said she was inside and started to go back inside the residence. When she tried to shut the door on the officers, they followed her into the home to execute the warrant.

Moreover, exigent circumstances existed in this case and, therefore, the officers were not required to wait longer than they did prior to executing the search warrant. "[E]xigent circumstances exist . . . when a suspect's awareness of the search would increase the danger to police officers or other, or when an officer must act quickly to prevent the destruction of evidence." Gillaum, 372 F.3d at 855 (quoting United States v. Howard, 961 F.2d 1265, 1267 [7th Cir. 1992].

The search warrant in this case was for drugs which are "the quintessential form of evidence that may be easily destroyed." Gillaum, 372 F.3d at 855. Officer Atkinson testified that he and the other officers followed Ms. Wilber into the Lafayette residence because the search warrant was for drugs and he was concerned that persons inside the house might try to dispose of any drugs. Once Ms. Wilber became aware of the officer's presence and their intention to execute a search warrant, the officers could reasonably conclude that any drugs that were in the residence would be destroyed.

Furthermore, even if the court were to conclude that the officers violated the knock and announce rule, the defendant would not be entitled to the suppression of the evidence. A violation of the knock and announce rule does not authorize exclusion of evidence seized pursuant to the ensuing search. Langford, 314 F.3d at 894; see also, Gillaum, 373 F.3d at 855.

In light of the foregoing, the court concludes that the search warrant was properly executed. Accordingly, this court will recommend that United States District Judge William C. Griesbach enter an order denying the defendant's motion to suppress evidence and statements based on an unreasonable execution of the search warrant. (Docket # 15).

### Amended Motion to Suppress Alleged Custodial Statements of the Defendant

The defendant also seeks to suppress the custodial statements he made to Shawano Police Department Officers Dan Conradt and Ryan Atkinson. Specifically, the defendant seeks suppression of his statement to Officer Conradt outside the Lafayette residence that the cocaine recovered in the Lafayette residence belonged to him and his statement to Officer Atkinson at the Shawano County Jail that the cocaine and the firearm recovered at the Lafayette residence belonged to him. The defendant asserts that at the time he made the statement to Officer Conradt he was in custody and not advised of his rights pursuant to Miranda.[2] He also asserts that the statement was not voluntarily made because at the time it was made he was under the influence of cocaine. With respect to the statement he made to Officer Atkinson, the defendant maintains that he did not knowingly, intelligently, and voluntarily waive his rights pursuant to Miranda at the time he was questioned. He further asserts that the waiver was not voluntary because he was under the influence of cocaine at that time.

In response, the government contends that the defendant made an unsolicited, spontaneous statement to Officer Conradt that cocaine would be found in the black bag in the baby's room. The government disputes that the defendant's statements were involuntarily made because he was under the influence of cocaine. The government maintains that the notations in the lock-up records merely reflect the memorialization of a statement by the

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

defendant to the authorities that he had consumed cocaine, not that the officers perceived the defendant to be under the influence of cocaine.

The Fifth Amendment privilege against self-incrimination and the right to counsel require the police to follow certain procedural safeguards during custodial interrogations of a suspect. Miranda v. Arizona, 384 U.S. 436 (1966). In this case, the defendant was in custody and had not been advised of his Miranda rights at the time he made the statement to Officer Conradt. Thus, the issue for the court with regard to the admissibility of the defendant's statement to Officer Conradt is whether the defendant was subjected to interrogation.

Interrogation includes express questioning, as well as "any words or actions on the part of the police (other than those attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Here, the evidence establishes that the defendant's statement that there was a black bag in the baby's room containing cocaine was volunteered by him. Volunteered statements are not within the scope of Miranda, insofar as the rights are designed to protect individuals from the coercive tactics of police interrogation. Rhode Island v. Innis, 446 U.S. at 301. The defendant's statement was not prompted by anything Officer Conradt did or said. Officer Conradt asked no questions of the defendant prior to the defendant volunteering the information. The fact that the defendant had consumed cocaine earlier that morning does not make his statement to Officer Conradt not a volunteered statement. Consequently, there is no basis for suppression of the defendant's statement to Officer Conradt.

With respect to the defendant's statement to Officer Atkinson, the defendant was in custody and subjected to interrogation. Thus, the issue is whether the defendant's waiver of his Miranda rights was knowing, intelligent and voluntary. The burden is on the government

to establish by a preponderance of the evidence that a defendant's waiver of <u>Miranda</u> rights was knowing and voluntary. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).

In <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) the United States Supreme Court set forth a two- pronged inquiry for determination of whether a waiver of rights is made voluntarily, knowingly, and intelligently:

1) [T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and,

2) The waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

A court may properly conclude that the <u>Miranda</u> rights have been waived by a defendant only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension. <u>Moran</u>, 475 U.S. at 421.

A confession is voluntary if "the government demonstrates that under the totality of the circumstances and by a preponderance of the evidence that 'it is not secured through psychological or physical intimidation but rather was the product of a rational intellect and free will.'" <u>United States v. Montgomery</u>, 14 F.3d 1189, 1194 (7th Cir. 1994) (quoting <u>United States v. Haddon</u>, 927 F.2d 942, 945 [7th Cir. 1991]); <u>see also</u>, <u>United States v. Dillon</u>, 150 F.3d 754, 757 (7th Cir. 1998). The crucial question is "whether the defendant's will was overborne at the time he confessed" and the answer lies in whether the authorities obtained the statement through coercive means. <u>Montgomery</u>, 14 F.3d at 1194 (citations omitted).

The issue of official coercion is considered from the perspective of a reasonable person in the defendant's position at the time of the statement. <u>Id</u>. In determining whether a reasonable person would feel coerced, the "characteristics of the accused and the details of the interrogations" are to be weighed. <u>Id</u>. (quoting <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 [1973]). Specific considerations are "the age of the defendant, his lack of education

or intelligence, the lack of any advice to him of his constitutional rights, the length of his detention, and the repeated and prolonged nature of questioning, and the use of physical punishment." Pharr v. Gudmanson, 951 F.2d 117, 120 (7th Cir. 1991). A diminished mental state due to the effects of alcohol or drugs "is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." Montgomery, 14 F.3d at 1195.

After due consideration of all the evidence, the court finds that the government has met its burden of establishing by the preponderance of the evidence that the defendant's statements were voluntary. The record in this case establishes that the defendant consumed cocaine in the morning prior to waiving his Miranda rights and making the statement to Officer Atkinson. However, there is no evidence that the defendant's state precluded him from exercising his rational intellect and free will. Although Officer Musolff indicated on the lockup and detention form that the defendant was under the influence of cocaine, he did so only because the defendant had told him that he had used cocaine earlier in the day. The defendant seemed fine to Officer Musolff. Officer Musolff testified that the defendant's eyes were a little glassy, but he also testified that the defendant was able to walk appropriately and his speech was not slurred.

Corporal Ninham completed an administrative/disciplinary segregation form and indicated that the defendant used cocaine and appeared intoxicated. Although the defendant understood the questions Corporal Ninham asked of him and his demeanor was fine, Corporal Ninham thought that the defendant physically appeared intoxicated because his eyes were a bit glassy and reddish.

Approximately two hours later, during the interview with Officer Atkinson, the defendant was calm and his answers to the questions posed by Officer Atkinson were responsive and

coherent. Officer Atkinson did not suspect that the defendant was under the influence of drugs or alcohol.

Based on the evidence presented, the court concludes that the government has established that defendant's statements to Officers Conrad and Atkinson were made knowingly, intelligently and voluntarily. Therefore, this court will recommend that the district judge enter an order denying defendant's amended motion to suppress alleged custodial statements of Todd A. Miller to Shawano Police Department Officers Don Conradt and Ryan Atkinson. (Docket # 18).

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that United States District Judge William C. Griesbach enter an order **denying** defendant's motion to suppress evidence and statements based on an unreasonable execution the search warrant . (Docket # 15).

**IT IS FURTHER RECOMMENDED** that United States District Judge William C. Griesbach enter an order **denying** defendant's amended motion to suppress alleged custodial statements of Todd A. Miller to Shawano Police Department Officers Don Conradt and Ryan Atkinson. (Docket # 18).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of

any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2005.

BY THE COURT:

  s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge